### SMITH *vs.* MAYOR AND COMMON COUNCIL OF THE CITY OF SACRAMENTO.

*Sixth Judicial District Court, May,* 1857.

CORPORATIONS—TRANSFER OF FUNDS—EMPLOYMENT OF COUNSEL.

Corporations possess not only such powers as are expressly granted, but such as are necessary to carry into effect the powers so expressly conferred.

The City Council of Sacramento have no right to transfer moneys in its treasury from one special fund to another, and the abuse thereof will be restrained by injunction.

The Council have an undeniable right to employ Counsel, other than the City Attorney, to protect its interest abroad, although the Charter may not specially provide therefor.

*Gass, Sunderland & Long*, for plaintiff.

*Moore*, City Attorney, for defendants.

The facts are fully reported in the opinion:

MONSON, J.—On the eighth day of April last, the Mayor and Common Council of the City of Sacramento, passed an Ordinance appropriating $5,000 for the purpose of employing Alpheus Felch to contest before the Supreme Court of the United States the claims of John A. Sutter to land within the corporate limits of said City, and the Mayor was authorized to draw his warrant for the same upon the Contingent Fund. There being no money in that fund to meet the payment of this warrant, the Mayor and Common Council ordered $5,000 to be transferred from the Debt and Interest and Sinking Funds for that purpose. The plaintiff, in his complaint, charges fraud and collusion between certain parties of the defendants in procuring the passage of

the ordinance. No proof, however, was adduced to support the charge, but the same was abandoned at the hearing.

The first question involved is, the power of the Mayor and Common Council to make the appropriation referred to ; in other words, whether they have the right to appropriate money and employ counsel to attend to cases pending before the Supreme Court of the United States, in which the City is interested ? It is urged by the plaintiff, that the people, under the charter, have elected a City Attorney, and that the Mayor and Common Council have no authority to employ any one to perform his duties, or to aid and assist in the performance of them. Even if this were admitted, can it be well contended that it is the duty of the City Attorney to proceed to Washington City, and there remain, watch and argue cases pending before the Supreme Court of the United States, in which the City may be interested ? Who would attend to his duties here during his absence ? The Legislature in requiring the City Attorney to attend to all suits in which the City is interested, intended suits or proceedings here—not in the City of Washington. The Mayor and Common Council, therefore, in the passage of the ordinance in question, were not attempting to employ Mr. Felch to perform, or to aid or to assist in the performance of any duty properly belonging to the City Attorney. If then, the City is interested in the question of the Sutter claim, have not the Mayor and Common Council the authority to employ some one to attend to her interest in the Supreme Court of the United States ? Plaintiff says no, for the reason that no such authority is expressly given to them by the charter. Corporations possess not only such powers as are expressly granted, but such as *are necessary to carry into effect the powers* so expressly conferred. By the charter, the City Council is authorized to " make by-laws and ordinances not repugnant to the Constitution and Laws of the United States, or of this State—to make appropriations for any object of City expenditure—to purchase, receive and hold for the use of the City, real and personal estate, &c., and to pass such other by-laws and ordinances for the regulation of said City, as they may deem necessary."

Do we not find here abundant authority for the passage of the ordinance in question ? If the City Council have the right to purchase and hold real estate, have they not the right to protect it, and, if neces-

sary, appropriate money for that purpose ? I think they have. If I am correct in this, then we have only to enquire whether the City of Sacramento, as a corporation, is interested in the rejection of the Sutter claim to the land within the corporate limits. If not, then the appropriation would be an unjustifiable abuse of authority, and call for the interposition of the law. In determining whether or not the City is interested, the Common Council have the power to exercise a reasonable discretion, and this Court has no right to interfere merely because it differs, perhaps, in opinion from them. I may think it more advangeous to the City and her citizens, to have the claim of John A. Sutter to the lands within her corporate limits, confirmed ; that the appropriation in question is an extravagant and useless one—just so much money thrown away ; of no benefit or advantage even to those who most desire the rejection of the Sutter title. But yet, if the defendants have not grossly abused that discretion which they possess, I cannot interfere. If the Mayor and Common Council held an undisputed Sutter title to all the land which the City is now in possession of, I, perhaps, would be justified in holding that the City of Sacramento had no interest either in the rejection or confirmation of the Sutter claim—for if confirmed, the City would have the title ; if rejected, then the lands within the corporate limits would become a part of the public domain, and subject to pre-emption by the corporate authorities for the use and benefit of the occupants. The pleadings show, however, that the City does not hold the undisputed Sutter title to the lands which she is now in possession of. That portion of the City known as the Levee, embracing the City water front, &c., is claimed by others, who allege that they have the Sutter title thereto. This is a valuable piece of property, (especially to the City,) upon which the corporate authorities have expended large sums of money in making improvements, and from the use of which a large revenue is annually derived. The defendants say that if the Sutter title is confirmed, the right of the City to this valuable property will be disputed,—the city subjected to protracted and expensive litigation, and her right to the property endangered, if not lost. The plaintiff and other citizens may think that these results will not follow—that provided the Sutter claim is confirmed, the right and title of the City to the Levee and water front cannot be successfully contested. The Mayor and Common Council, however, appear

to think otherwise, and in so thinking I am not prepared to say that they are so grossly abusing that discretion which, by law, they are invested with, as to justify judicial investigation. I would here dissolve the injunction, but it appears from the pleadings, and was admitted upon the hearing, that, for the purpose of meeting the warrant drawn in favor of Mr. Felch, the Common Council has transferred (borrowed as they call it,) $5,000 from the Debt and Interest and Sinking Funds to the Contingent Fund. In this the defendants acted without authority of law, and in violation of good faith—both of which funds must and should be held sacred for the purposes for which they were created. They were authorized for a certain specific purpose, and the City Council have no right to touch or use them for any other. If it is true, as stated, that previous City Councils, in similar cases, have acted in like manner, while it affords no excuse—it yet shows and proves that it is full time that the Courts should interpose and prevent the repetition of such unauthorized acts. The Mayor and Common Council must be restrained from using or appropriating the money in or belonging to the Debt and Interest and Sinking Funds for any purpose whatever, other than such as for which they were created. When the defendants have replaced the money transferred to the Contingent Fund from the Debt and Interest and Sinking Funds, and the same is satisfactorily proven to me, I shall dissolve this injunction so far as to permit the Mayor to draw his warrant in favor of Alpheus Felch upon the General Fund.